UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                            )
CURTIS HOWELL,              )
                            )
        Plaintiff,          )
                            )
        v.                  )     CIVIL ACTION
                            )     NO. 21-11976-PBS
MIDDLESEX COMMUNITY COLLEGE, et )
al.,                        )
                            )
        Defendants.         )
                            )
```

**MEMORANDUM AND ORDER**

December 20, 2022

SARIS, D.J.

*Pro se* plaintiff Curtis Howell brings this action in which he alleges that the Middlesex Community College ("MCC") wrongfully prevented him from receiving Federal Student Aid ("FSA"), which resulted in him withdrawing from school.  For the reasons set forth below, the Court will dismiss this action without prejudice.

## I.   Magistrate Judge's Review of the Amended Complaint

On December 7, 2021, Howell commenced this action by filing a complaint against Middlesex Community College ("MCC"), the Massachusetts Commissioner Against Discrimination ("MCAD"), Bank of America, and Verizon Wireless.  On February 28, 2022, Howell filed an amended complaint in which MCC and the MCAD are the only defendants (Docket No. 8).

The Court granted Howell's motions for leave to proceed in forma pauperis and, as authorized under 28 U.S.C. § 1915(e)(2), proceeded to conduct a preliminary review of the amended complaint.  (Docket No. 12).  This statute permits a federal district court to dismiss an in forma pauperis complaint sua sponte if the claims therein are frivolous, malicious, fail to state a claim on which relief can be granted, or seek monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

The thrust of Howell's amended complaint was that MCC had violated his rights under the American with Disabilities Act by requiring him to provide proof of his General Educational Development ("GED") credential before releasing federal student aid funds for him.  Howell alleged that this requirement was improper because he had previously obtained FSA for college without having to get a GED certificate.  He further represented that he called an FSA agency and was informed that separate proof of a GED was not required.  Howell also took the position that MCC's conduct was wrongful because MCC accepted him as a student and permitted him to enroll in classes prior to requiring proof of his GED credential.  Howell further alleged that he was not permitted to be on MCC's campus to provide his previous college transcript.  Finally, he argued that the MCAD did not timely address his claim of discrimination.

The Court concluded that the amended complaint failed to state a claim upon which relief could be granted because it did not set forth a plausible claim of unlawful discrimination based on disability.  The Court explained Howell had not identified his disability, and, that Howell's assertions that MCC discriminated against him on the basis of disability are entirely conclusory.  The judge also found that the MCAD's alleged delay in adjudicating his administrative claim to did not give rise to a cause action.  Judge Dein ordered Howell to file a second amended complaint curing the pleading deficiencies, and that failure to do so could result in dismissal by a District Judge.

On May 5, 2022, Howell filed a second amended complaint (Docket No. 17).  On June 24 and 27, 2022, Howell filed notices appeal two of the orders, including the order requiring him to file a second amended complaint.  (Docket Nos. 24, 27).  On September 30, 2022, the First Circuit issued a judgment dismissing the appeals for lack of jurisdiction.  (Docket No. 37).  The action was then reassigned to the undersigned.

**II.  Review of the Second Amended Complaint**

**A.  Allegations and Claims in the Second Amended Complaint**

In the second amended complaint, Howell again alleges that MCC discriminated against him on the basis of disability by requiring him to provide proof of a high school diploma or GED

3

certification prior to the releasing federal funds to him.
Howell claims that requirement "would require [him] to go
backwards and verify something that is below the higher learning
verifications," and that the requirement was unnecessary because
he had already attended another community college in the
Commonwealth.  Second Am. Compl. at 6, ¶ 1.

Howell maintains that MCC learned that he had a mental
disability because his medical records "were disseminated by the
[L]owell police on Facebook and over 5000 people per the 99
commenters were able to see it would more than likely give rise
that these staff members at [MCC] knew that [he] had a
disability."  Id.  Howell claims that, because MCC knew of his
disability, its employees "tried to manipulate [him] and deceive
[him] to believe that there was an additional step in the
process despite [him] already being ready for classes."  Id.
Howell continues:

> So by [MCC] telling me additional process that only
> first time college students do, and not those things
> go been to college, or because [MCC] try [sic] to show
> authority and declare that my knowledge of the school
> process was wrong by deception and falsity thus
> discriminated against me being that I am disabled and
> I trust in these words that the process they were
> informing me of is the right way.  Which is not true
> cause once you enroll in class there is no further
> process.

Id. at 7, ¶ 1.

4

Howell further alleges:

I was denied a reasonable accommodation and ordered to
do more although the person was talking to me like I
could not comprehend nor understand the school policy
and what their actions were doing was deliberate
deceptive behaviors.  This is not equal to what the
normal student has to do and because I'm disabled I
felt like I was being treated like I was dumb or could
easily be fooled and delayed.  Because they felt like
I was mentally ill and did not know the law, which
denied me rehabilitation denied my right to express
and learn, deprived me of my liberty and stop my
worship of religion cause I could not continue the
school process which was delayed and treated me less
than whites.  Likewise highlighting my disability post
traumatic stress, anxiety due to conflicts with
authority figures as a child and up.

Id. at 8, ¶ B (spelling standardized).  Elsewhere in the second

amended complaint, he repeats the allegations that the conduct

of MCC employees denied interfered with his religious worship

because he "could not continue the school process which was

delayed" and that he was "treated less than whites."  Id. at 7,

¶ A; 9, ¶ D.

Finally, Howell claims that, when he tried to deliver a

transcript of the courses he had taken from a different college

to MCC, he "was detained illegal[ly] and denied entrance."  Id.

at 7, ¶ 1.

Howell brings claims for violations of his rights under the

First and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. § 1983 ("§ 1983); for unlawful

discrimination on the basis of disability, see 42 U.S.C.

§§ 12131-12134 (Title II of the Americans with Disabilities Act) and 29 U.S.C. § 794 (Rehabilitation Act); for unlawful discrimination on the basis of basis of race (42 U.S.C.§ 2000d); and U.S.C. §§ 1981, 1982, 1985(3), 1986.[1]

**B.   Standard of Review**

To state a claim for relief, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

---

[1] Not all of these statutory citations appear in Howell's pleading.  Where Howell has cited to a statute that is not applicable to a claim of discrimination in public educational institution, the Court has provided the appropriate citation. Howell also seeks relief under 42 U.S.C. § 2000bb-1, but this statute was struck down as unconstitutional in 1997.  See City of Boerne v. Flores, 521 U.S. 507 (1997).

Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint
pleads facts that are 'merely consistent with' a defendant's
liability, it 'stops short of the line between possibility and
plausibility of 'entitlement to relief.'"  Id. (quoting Twombly,
550 U.S. at 557) (internal quotation marks omitted).  A
plaintiff must "nudge[] [his] claims across the line from
conceivable to plausible."  Twombly, 550 U.S. at 570.
Determining whether a pleading meets the plausibility
requirement is a "context-specific task that requires the
reviewing court to draw on its judicial experience and common
sense."  Iqbal, 556 U.S. at 679.

   **C.   Discussion**

      **1.   Discrimination Based on Disability**

   Title II of the ADA provides that "no qualified individual
with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity."  42 U.S.C.
§ 12132.[2]  "The term 'qualified individual with a disability'
means an individual with a disability who, with or without

---

[2] Because a claim under the Rehabilitation Act against a public
entity is "materially identical" to a claim under Title II of
the ADA, see A.H. by Holzmueller v. Ill. High Sch. Ass'n, 881
F.3d 587, 592 (7th Cir. 2018), the Court will cite only to Title
II of the ADA.

reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(b).

Here, the Court cannot reasonably infer from Howell's allegations that MCC excluded him from receiving FSA because of his disability or that MCC failed to provide a reasonable modification of its rules or policies to allow him to receive FSA.

A student must meet various requirements to be eligible for FSA.  One condition is that a student have a high school diploma or the "equivalent" thereof.  20 U.S.C. § 1091(d)(1).[3]  The definition of a "recognized equivalent of a high school diploma," includes, in relevant part, a GED Certificate (or equivalent state certificate) or an "academic transcript of a student who has successfully completed at least a two-year program that is acceptable for full credit toward a bachelor's degree."  34 C.F.R. § 600.2.  The educational institution is

---

[3] If a student does not have a high school diploma or its equivalent, the student may nonetheless qualify for federal student aid if "[t]he student is enrolled in an eligible career pathway program" which meets a certain standard or the student has "completed a secondary school education in a home school setting that is treated as a home school or private school under State law."  20 U.S.C. § 1091(d)(1)(A),(B).  Howell's factual allegations do not support any inference that either category of eligibility applies to him.

responsible for ensuring that a student meets this and other qualifications for the receipt of federal student aid.  See United States Dep't of Education, 2021-2022 Federal Student Aid Handbook, at 1-7 through 1-20 (available at https://fsapartners.ed.gov/sites/default/files/2021-07/2122FSAHbkVol1Master.pdf (last viewed Dec. 5, 2022). Although a student may self-certify on the Free Application for Federal Student Aid ("FAFSA") form that he has a diploma or high school equivalency certificate, the school cannot rely on the self-certification alone if the school requires a high school diploma or equivalency certificate for admission.  Id. at 1-12.

In light of the aforesaid federal law concerning the requirement that a recipient of FAS have a high school diploma or the recognized equivalent thereof and of an educational institution's responsibility to ensure compliance, the Court cannot reasonably infer from Howell's allegations that MCC discriminated against him because of his disability.  Howell believes that MCC was imposing an unnecessary condition on his receipt of FSA solely because of his disability.  However, as set forth above, federal law requires educational institutions to ensure that students receiving FSA meet all requirements for eligibility.  Contrary to Howell's suggestion, his attendance at some classes at a community college elsewhere did not automatically establish his eligibility for FSA at MCC.  A

transcript showing that he had "successfully completed at least a two-year program that is acceptable for full credit toward a bachelor's degree," 34 C.F.R. § 600.2, was necessary, and he does not suggest that the transcript he sought to provide MCC showed that he had completed such a program.  In addition, depending on its admission requirements, MCC may be required under law to obtain a high school diploma or GED certificate from a student, regardless of the student's self-certification on the FAFSA that he had a high school diploma or GED certificate.  Accordingly, Howell has not set forth a plausible claim that MCC acted with a discriminatory motive.

### 2.    First and Fourteenth Amendments; 42 U.S.C § 1983

Howell alleges that MCC has violated his rights under the First and Fourteenth amendments of the United States Constitution.  Claims for violations of federal rights by state actors must be brought under 42 U.S.C. § 1983.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.")  This statute provides that any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. While a § 1983 claim may be asserted against state or local employees who were directly involved in the violation of a plaintiff's federal rights, a § 1983 claim cannot be asserted against a state or its agencies. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Because MCC is a state agency see M.G.L. ch. 15A, § 5; Fantini v. Salem State College, 557 F.3d 22, 33 (1st Cir. 2009), it cannot be liable under § 1983.[4]

### 3.   Racial Discrimination

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.§ 2000d. Because MCC receives federal financial assistance, it is subject to this statute.

Howell's claim of racial discrimination is that he is treated "less than whites." This conclusory allegation lacks sufficient factual specificity to permit the Court to reasonably

---

[4] Further, the Court cannot reasonably infer from Howell's allegations that the alleged misconduct of any MCC employee violated his rights under the First or Fourteenth amendments.

infer therefrom that MCC discriminated against Howell on the basis of race.

### 4.   42 U.S.C. §§ 1981, 1982, 1985(3), and 1986.

Howell seeks to hold MCC liable under 42 U.S.C. § 1981, 1982, 1985(3), and 1986.  All these statutes concern the equal rights of citizens.  However, states (including their agencies) cannot be sued under these statutes in a federal court.

The Eleventh Amendment of the United States Constitution generally is recognized as a bar to suits in federal courts against a State, its departments and its agencies, unless the State has consented to suit or Congress has overridden the State's immunity.  See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007).  In enacting 42 U.S.C. § 1981, 1982, 1985(3), or 1986, Congress did not override the Eleventh Amendment immunity of the states.  See Henry v. Florida Bar, 701 Fed. App'x 878, 881 (11th Cir. 2017); Cerrata v. San Francisco Community College Dist., 26 F.3d 968, 975 (9th Cir. 1994).

## III. Conclusion

In accordance with the foregoing, the Court hereby orders that this action be DISMISSED for failure to state a claim upon which relief may be granted.

SO ORDERED.

/s/ Patti B. Saris
Patti B. Saris
United States District Judge